UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Arif A. Durrani,                          :
                                          :
              Plaintiff,                  :
       v.                                 :          Civil Action No. 08-0609 (CKK)
                                          :
U.S. Department of Justice *et al.*,      :
                                          :
              Defendants.                 :

MEMORANDUM OPINION

In this action brought *pro se* under the Freedom of Information ("FOIA"), 5 U.S.C. § 552,

plaintiff challenges the responses of the Departments of Justice, State and Homeland Security to

his FOIA requests.  Pending before the Court are plaintiff's motion for summary judgment [Dkt.

No. 28], the Department of Justice's ("DOJ") motion for summary judgment [Dkt. No. 31] and

the Departments of State and Homeland Security's joint motion for summary judgment [Dkt. No.

33].  Upon consideration of the parties' submissions and the entire record, the Court will (1) deny

plaintiff's summary judgment motion because it is not "properly made and supported," Fed. R.

Civ. P. 56(e)(2),[1] (2) grant DOJ's motion for summary judgment and (3) grant in part and deny in

part the Departments of State and Homeland Security's joint motion for summary judgment.

I.  FACTUAL BACKGROUND

1.  <u>Department of Justice</u>

By letter of July 11, 2007, plaintiff requested records from DOJ's Executive Office for

---

[1]  In his Statement of Material Facts Not in Genuine Dispute [Dkt. No. 28, pp. 8-13], plaintiff mostly recites unsubstantiated facts and conclusions about his criminal case that are not material to the issues to be decided under the FOIA.  Moreover, plaintiff has not cited "to the parts of the records relied upon to support the statement."  LCvR 7(h).

United States Attorneys ("EOUSA") pertaining to "the kidnapping, abduction, and arrest of the undersigned arranged by the U.S. Attorney's Office in the Southern District of California [and] any [related] Release[.]."  Def.'s Attachment A, Declaration of David Luczynski ("Luczynski Decl.") [Dkt. No. 31-2] ¶ 4 & Ex. A.  By letter of October 31, 2007, EOUSA released to plaintiff 29 pages of responsive records in their entirety, withheld 23 pages in their entirety and referred 25 pages to Homeland Security and two pages to the United States Marshals Service, a DOJ component.  Id. ¶ 6 & Ex. C.  EOUSA withheld information under FOIA exemptions 5, 7(A), 7(C) and 7(D), see 5 U.S.C. § 552(b).  Id., Ex. C.  By letter of February 26, 2008, DOJ's Office of Information and Privacy affirmed EOUSA's release determination.  Id., Ex. F.  In addition, EOUSA withheld in their entirety seven pages that were referred from the State Department under FOIA exemptions 5 and 7(C).  See generally Def.'s Attachment B, Supplemental Declaration of David Luczynski [Dkt. No. 31-3].

By letter of November 16, 2007, the Marshals Service released the two referred pages but redacted the names of law enforcement officers under FOIA exemption 7(C).  Def.'s Attachment C, Declaration of William E. Boardley [Dkt. No. 31-4] ¶ 4 & Ex. B.

## 2.  Department of State

By letter of April 5, 2006, addressed to the State Department's Bureau of Political-Military Affairs Defense Trade Control, plaintiff requested the following: (a) records pertaining to communications between the State Department and Assistant United States Attorney William Crowfoot concerning the export licensing of the Royal Jordanian Embassy for shipments made on May 16, 1994; (b) "[c]opies of all export licenses applications, endorsements made by U.S. Customs or any other [U.S.] agency . . . for export licenses that are subject of this case #CR99-

470-PA;" (c) "reports and correspondence submitted by the Royal Jordanian Embassy and Circle

International Inc. under 22 U.S.C. § 2778 9(i) within [] (15) days of May 16, 1994 shipment[;]"

and (d) communications between the State Department and Crowfoot used "to verify any matter

related to this" FOIA request.  Def.'s Mot., Second Declaration of Margaret P. Grafeld ("Grafeld

Decl.") [Dkt. No. 33-2] ¶ 4 & Ex. 1.   Plaintiff's request was forwarded to the Office of

Information Programs and Services ("IPS"), "which is the office to which FOIA requesters are to

submit their requests[.]"  *Id.* ¶ 5.

By letter of December 20, 2007, IPS released to plaintiff "one document containing

information about the licenses in question" and informed him that any information that "relates

to licenses, manufacturing license agreements, or other records authorizing the commercial

export of defense articles and services" was exempt from disclosure under FOIA exemption 3.

*Id.* ¶ 10 & Ex. 7.  By letter of October 9, 2008, IPS informed plaintiff that it had located an

additional 25 responsive records, 13 of which were released with redactions.  IPS withheld eight

pages in full and referred four pages to DOJ.  *Id.* ¶ 12 & Ex. 9.  It cited exemptions 3 and 5 as the

bases for withholding information.  *Id.*, Ex. 9.  In addition, the State Department withheld in full

three documents referred from Immigration and Customs Enforcement ("ICE") under exemption

3.  *Id.* ¶¶ 22-23.

### 3.  Department of Homeland Security

By letter dated September 11, 2006, plaintiff requested from Customs and Border

Protection ("CBP") material pertaining to communications between CBP "and any other agency,

department or office of the U.S. government . . .  [;]" the names "of all individuals, including the

three U.S. Customs Agents [,] who were at LAX Airport . . . on June 15, 2005, when [plaintiff]

3

was kidnapped and illegally brought from Mexico City . . . [t]ogether with copies of all photographs taken by [] Customs Agents . . . from Oxnard/Camarillo. . . ."  Def.'s Mot., Declaration of Reba A. McGinnis ("McGinnis Decl.") [Dkt. No. 33-3], Ex. 1.  Also by letter dated September 11, 2006, plaintiff requested from CBP documents "that clearly show that [seized jet] Engines were imported by S & S Turbine. . . ."  *Id.*, Ex. 2.   CBP referred plaintiff's requests to ICE, which informed plaintiff by letters of September 26, 2007 and September 28, 2007 that responsive records were being withheld in their entirety under FOIA exemption 7(A).  It further informed plaintiff that once that exemption no longer applied, records may still be withheld under exemptions 2, 7(C), 7(D) and 7(E).  *Id.*, Exs. 6, 7.  By letter of October 10, 2008, ICE, in a supplemental response, informed plaintiff that it had located 94 responsive records.  It released seven redacted pages and one unredacted page of information.  ICE withheld 86 pages in their entirety.  ICE withheld information under exemptions 2, 6, 7(A), 7(C) and 7(E).  *Id.*, Ex. 8.

By letter dated December 28, 2007, plaintiff requested from ICE "all my immigration records that were obtained by ICE Attache in Mexico City and ICE representative in Tijuana, Mexico" and related records pertaining to his "immigration status in Mexico" and his extradition from Mexico to the United States.  *Id.*, Ex. 9.  By letter of September 5, 2008, ICE released to plaintiff 43 responsive records in their entirety.  *Id.* ¶ 7.  Also by letter dated December 28, 2007, plaintiff requested from ICE documents titled "'Hostage Negotiations' given by Manuel Pires in July 1987 to U.S. Custom Agent Steven Arruda. . . ."  *Id.*, Ex. 14 [Dkt. No. 42-4].  By letters of February 1, 2008 and March 24, 2008, ICE informed plaintiff that it had located no responsive records.  *Id.*, Exs. 15, 17.

At some point, CBP "discover[ed] that it should have independently processed Plaintiff's

FOIA request" and proceeded to do so.  Def.'s Mot., Declaration of Mark Hanson ("Hanson

Decl.") [Dkt. No. 33-4] ¶ 4.  By letter of October 9, 2008, CBP informed plaintiff that it had

located 22 responsive pages, 11 of which were being released in full and eight of which were

being released with redactions.  It withheld three pages in full.  *Id.* ¶ 11.  CBP withheld

information under exemptions 2, 5, 6, 7(A), 7(C) and 7(E).  *Id.*, Ex. A.

## II.  LEGAL STANDARD

Summary judgment is appropriate upon a showing that there is "no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party" on an element of the claim.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The FOIA requires a federal agency to release all records responsive to a properly

submitted request except those protected from disclosure by one or more of nine enumerated

exemptions.  *See* 5 U.S.C. § 552(b).  The agency's disclosure obligations are triggered by its

receipt of a request that "reasonably describes [the requested] records" and "is made in

accordance with published rules stating the time, place, fees (if any), and procedures to be

followed."  5 U.S.C. § 552(a)(3)(A).  The FOIA authorizes the court only "to enjoin [a federal]

agency from withholding agency records or to order the production of any agency records

improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  Thus, the elements of a

FOIA claim are (1) improperly  (2) withheld (3) agency records.  "Judicial authority to devise

remedies and enjoin agencies can only be invoked under the jurisdictional grant conferred by [5

U.S.C.] § 552 [(a)(4)(B)], if the agency has contravened all three components of this obligation."
*Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 150 (1980).

In a FOIA case, the Court may award summary judgment to an agency solely on the
information provided in affidavits or declarations when they describe "the justifications for
nondisclosure with reasonably specific detail, demonstrate that the information withheld logically
falls within the claimed exemption, and are not controverted by either contrary evidence in the
record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738
(D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*,
415 U.S. 977 (1974). In opposing a summary judgment motion, plaintiff may not "replace
conclusory allegations of the complaint or answer with conclusory allegations of an affidavit,"
*Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990), but rather must "set forth
specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

### III.  DISCUSSION

### 1.  Department of Justice Records

#### EOUSA Records

EOUSA withheld 23 responsive pages in their entirety under FOIA exemption 5, in
conjunction with exemptions 7(C) and 7(D). Luczynski Decl. ¶¶ 16, 20-22, 26. Exemption 5
protects from disclosure "inter-agency or intra-agency memorandums or letters which would not
be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). This
provision applies to materials that normally are privileged in the civil discovery context,
including those protected by the attorney work product privilege, the attorney-client privilege,
and the deliberative process privilege. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149

(1975); *FTC v. Grolier, Inc.*, 462 U.S. 19, 26 (1983) ("The test under Exemption 5 is whether the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance."); accord *Martin v. Dep't. of Justice,* 488 F.3d 446, 455 (D.C. Cir. 2007).

The 23 withheld pages consisted of "a draft of an indictment, an email between attorneys, a draft of a prosecutorial memorandum, and a single handwritten page, [] all written by attorneys preparing the case." *Id.* ¶ 19.  Because EOUSA rightly asserts that the foregoing pages constitute attorney work product, *id*.  ¶ 16, it properly withheld them in their entirety under exemption 5. *See Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 371 (D.C. Cir. 2005) ("If a document is fully protected as work product, then segregability is not required.").  The Court therefore need not address the propriety of EOUSA's withholding of the same information under exemptions 7(C) and 7(D).

Similarly, EOUSA withheld as attorney work product and deliberative process material seven pages of records referred from the State Department because "[e]ach . . . record[] is a letter between an individual involved in the [criminal] matter and an attorney that was handling the case."  Supp. Luczinski Decl. ¶ 2; *see id*. ¶ 6 (describing information as "reflect[ing] such matters as trial strategy, interpretations, and personal evaluations and opinions pertinent to Plaintiff's criminal case").  In addition, "[t]wo pages of records also contain handwritten notations on the margins performed by the Department of State Personnel."  *Id.* ¶ 2.  The latter constitutes deliberative process material, from which "purely factual material" should  be severed and released.  *Wolfe v. Dep't of Health and Human Services*, 839 F.2d 768, 774 (D.C. Cir. 1998) (internal quotation marks omitted); *see accord Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008) ("the deliberative process privilege does not protect documents in their entirety; if the

government can segregate and disclose non-privileged factual information within a document, it must.") (citation omitted).  EOUSA states, however, that "[t]he attorney work product and deliberative process are so interwoven as to make it all . . . attorney work product," *id*. ¶ 7, thereby properly justifying its withholding of the seven referred pages in their entirety.

Marshals Service Records

Invoking FOIA exemption 7(C), the Marshals Service redacted the names of law enforcement officers from the two pages of referred records it released to plaintiff.  The "two reports of investigation . . . originated in the . . . system of records . . . related to the execution of federal arrest warrants and the investigation of fugitives."  Bordley Decl. ¶ 3.   Exemption 7(C) protects from disclosure  records compiled for law enforcement purposes to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  The Marshals Service has satisfied the threshold law enforcement purpose.  Third-party information contained in law enforcement files is "categorically exempt"  from disclosure under exemption 7(C) in the absence of a showing that an overriding public interest warrants disclosure.  *Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F.3d 885, 896 (D.C. Cir. 1995); accord *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1115 (D.C. Cir.  2007) (exemption 7(C) "protects the privacy interests of all persons mentioned in law enforcement records, whether they be investigators, suspects, witnesses, or informants") (citation omitted).

In order to demonstrate an overriding public interest in disclosure, plaintiff must show that the withheld information is necessary to "shed any light on the [unlawful] conduct of any Government agency or official."  *United States Dep't of Justice v. Reporters Committee for*

8

*Freedom of the Press*, 489 U.S. 749, 772-73 (1989); accord *SafeCard Services, Inc., v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).  "Where the privacy concerns addressed by Exemption 7(C) are present, . . . [the requester] must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake [and that] . . . the information is likely to advance that interest."  *National Archives and Records Administration v. Favish*, 541 U.S. 157, 172 (2004).  In making such a showing, plaintiff must assert "more than a bare suspicion" of official misconduct. *Id*. at 174.  He "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id*.  Otherwise, the balancing requirement does not come into play.  *See id*. at 175.  Plaintiff has not specifically challenged the Marshals Services otherwise proper redactions made pursuant to exemption 7(C).

Plaintiff has not stated any facts to create a genuine issue with respect to DOJ's proper withholding of responsive material.  Moreover, DOJ properly withheld certain records in their entirety under exemption 5.[2]  The Court therefore finds that DOJ is entitled to judgment as a matter law.

## 2. Department of State Records

The State Department withheld information under FOIA exemptions 3 and 5.  Exemption 3 protects from disclosure records that are "specifically exempted . . . by statute . . .  provided that such statute either "(A) [requires withholding] in such a manner as to leave no discretion on

---

[2]  *See Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022, 1027-28 (D.C. Cir. 1999) (requiring the court to make a finding as to whether defendant properly withheld documents in their entirety).

the issue," or "(B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552 (b)(3); *see also Senate of the Commonwealth of Puerto Rico v. U. S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).  The State Department invoked a provision of the Immigration and Nationality Act, 8 U.S.C. § 1202(f), and one of the Arms Export Control Statute ("AECS"), 22 U.S.C. § 2778(e).

Section 1202(f) of Title 8 makes confidential "records of the Department of State . . . pertaining to the issuance or refusal of visas or permits to enter the United States."  8 U.S.C. § 1202(f).  Although it permits discretion by the Secretary of State to disclose information under certain circumstances, *see id.*, the provision "qualifies as a disclosure-prohibiting statute under both subsection (A) and (B) of Exemption (b)(3) of FOIA."  *Perry-Torres v. United States Dep't of State*, 404 F. Supp.2d 140, 143 (D.D.C. 2005) (*citing Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 740-43 (D.C. Cir. 1983); *Church of Scientology of Cal. v. Dep't of State*, 493 F. Supp. 418, 423 (D.D.C. 1980)).  Thus, the remaining question is whether the withheld material is the type to be protected.

Defendant withheld three one-page documents each pertaining "to a specific individual and [] relevant to the determination to issue or refuse a visa or permit to enter the United States."  2nd Grafeld Decl. ¶ 40; *see also* ¶¶ 37-39 (describing documents D1, D1A, D1B).  Defendant properly applied exemption 3 to those documents under the foregoing statute but, as discussed later, has not justified withholding them in their entirety.

Section 2778(e) of Title 22, by incorporation of the Export Administration Act ("EAA"), exempts from FOIA disclosure "information obtained for the purpose of consideration of, or concerning, license applications under [the EAA] . . . unless the release of such information is

determined by the [Commerce] Secretary to be in the national interest."  50 U.S.C. app.

§ 2411(c).  It excludes from such protection "the names of the countries and the types and

quantities of defense articles for which licenses are issued under this section . . . unless the

President determines that the release of such information would be contrary to the national

interest."  22 U.S.C. § 2778(e).  Section 2411(c) "qualifies as an Exemption 3 statute."

*Wisconsin Project on Nuclear Arms Control v. United States Dep't of Commerce*, 317 F.3d 275,

281 (D.C. Cir. 2003).

      The State Department  "withheld [information] from twenty documents" under the

foregoing provisions.  2ⁿᵈ Graefeld Decl. ¶ 33.  Six documents are license applications or

approved licenses that were released with the exempted information redacted, *id*. ¶¶ 50-56, and

six are attachments to license applications containing exempted information, *id*. ¶¶ 57-62.

Defendant released two of the latter category of documents in part, however, because the

information was previously released "or is otherwise in the public domain," or was the type

excepted under § 2778(e).  *Id*. ¶ 63.  In addition, the State Department released parts of four

documents described as e-mail exchanges concerning export licenses and trial preparations.  *Id*.

¶¶ 43-46.  It redacted "specific information on licenses issued and interpretations as to what those

licenses covered" under exemption 3.  *Id*. ¶ 47.  The State Department released a facsimile cover

sheet accompanying two completed license applications after redacting the identification of a

supplier and that of a freight forwarder under exemption 3 and a handwritten note in the margin

under exemption 5.  *Id*. ¶ 49.  Finally, the State Department withheld in full three one-page

documents, two pages of which are "request[s] for amendment of existing licenses submitted on

behalf of the Kingdom of Jordan" and the third page of which is an attachment to one of those

requests.  *Id*. ¶¶ 64-66.

Under exemption 5, the State Department withheld as deliberative process material an employee's three-page "undated draft memorandum . . . relating to potential testimony by a Department employee in a criminal case involving [plaintiff]." *Id.* ¶ 41; *see also* ¶ 42 (describing document as addressed to a "senior . . . management official," undated, unsigned and containing "several strike-outs and emendations"). Because "the entire document is a draft concerning plans for the trial, which appears never to have taken place, there is no non-exempt factual information that may be meaningfully segregated and released to the requester." 2nd Grafeld Decl. ¶ 42. Defendant properly withheld the document (L4A) in full insofar as exemption 5 is "intended to protect not simply deliberative material, but also the deliberative process of agencies" prior to reaching a final decision. *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1538 (D.C. Cir. 1993) *(quoting Montrose Chemical Corp. v. Train* , 491 F.2d 63  (D.C. Cir. 1974)).  Hence, "[w]hen a summary of factual material on the public record is prepared by the staff of an agency administrator, for his use in making a complex decision, such a summary is part of the deliberative process" protected from disclosure by exemption 5. *Id.*

The State Department invoked exemption 5, in conjunction with exemption 3, to withhold portions of the previously described e-mail exchanges that pertain to trial preparations. *See* 2nd Grafeld Decl. ¶¶ 43-45.  It redacted from two documents, L6 and L9, "pre-decisional views about how to proceed in the context of court proceedings then pending in California," and information "undertaken in confidence among [employees of the agency's Directorate of Defense Trade Controls] and their attorneys in the Office of the Legal Adviser." *Id*. ¶ 47.  The remaining two documents, M2 and M62, contained the "employees' deliberations about an export license, the information in it, and how to prepare for a conference call with an assistant United States attorney" and their "deliberations and questions about how license application procedures work,

12

sparked by the dismissal of charges against Mr. Durrani." *Id*.   The latter exchange in Document M62 is not pre-decisional because it admittedly occurred after a decision was reached not to prosecute the plaintiff.  The State Department therefore has not properly withheld such information under exemption 5.  *See Mapother*, 3 F.3d at 1537 ("The deliberative process privilege protects materials that are both predecisional and deliberative.") (citations omitted); *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) ("The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made[.]"). The State Department will be directed to release those specific portions of information.

Finally, the State Department properly redacted from the previously described facsimile cover sheet accompanying two license applications (Document M28A) a handwritten note that "raise[d] a question as to the interpretation of one of the licenses," as deliberative process material.  Grafield Decl. ¶ 49.

### *Record Segregability*

As previously noted, the Court must determine on its own whether defendant properly withheld responsive records in their entirety.  *See supra* note 2.  In order to justify such withholdings, an agency must demonstrate that the "exempt and nonexempt information are 'inextricably intertwined,' such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." *Mays v. Drug Enforcement Administration*, 234 F.3d 1324, 1327 (D.C. Cir. 2000) (*quoting Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981)) (other citation and internal quotation marks omitted).

The State Department properly withheld whole records under exemption 5 as attorney work product and deliberative process material so intertwined with attorney work product that it cannot be reasonably segregated to allow for a meaningful release of non-exempt material.  As to

the remaining documents withheld in their entirety under exemption 3 (D1, D1A, D1B, M31D,

M31G, M31H, M31I, M32, M32A, M32B), Grafeld's justifications, *e.g.*, that because "the

entirety of these documents concerns license applications, there is no information in them that

can be segregated for release," Grafeld Decl.  *Id*. ¶ 67, improperly focuses on the type of

document rather than on the information contained therein.  Grafeld  has neither stated outright

nor provided sufficient facts from which it may be reasonably inferred that staff reviewed each

document for the purpose of determining whether it contained segregable, non-exempt

information that could be released.  The Court, then, will defer its segregability finding pending

defendant's supplementation of the record.  *See Schiller v. N.L.R.B.*, 964 F.2d 1205, 1211 (D.C.

Cir. 1992) ("The 'segregability' requirement applies to all [§ 552] documents and all exemptions

in the FOIA.") (citation omitted); *Marks v. Central Intelligence Agency*, 590 F.2d 997, 1000

(D.C. Cir. 1978) (remanding for district court "to determine whether the four documents

involved are entirely exempt under Exemption 3 . . . or whether there are fairly segregable

portions").

3.  <u>Department of Homeland Security Records</u>

<u>ICE Records</u>

ICE redacted information from seven released pages under FOIA exemptions 2, 6, and

7(C) and withheld 86 pages in their entirety under exemptions 2, 6, 7(A), 7(C) and 7(E).

McGinnis Decl. ¶ 15 & *Vaughn* index.

*A.  Exemption 2*

Exemption 2 protects from disclosure information that is "related solely to the internal

personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  "If the threshold test of

predominant internality is met," courts typically limit exemption 2 protection to "trivial administrative matters of no genuine public interest" ("low 2" exempt information), and to information that, if disclosed, "may risk circumvention of agency regulation" ("high 2" exempt information).  *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (*quoting Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990)).

ICE properly invoked exemption 2 to justify redacting as "low 2" material the direct telephone numbers of Special Agents from reports of investigation, as well as various internal codes from reports of investigation, an incident report, "a Record of Deportable/Inadmissible Alien," and a custody receipt for seized property and evidence.  McGinnis Decl. ¶ 19.  In addition, ICE properly justified redacting as "high 2" material some of the same codes that "serve a dual purpose,"[3] and information "relating to the coordination of investigative efforts with other law enforcement agencies, investigative procedures and coordination amongst agency field offices regarding the conducting of investigative activities."  *Id*. ¶ 20.  It reasonably asserts, among other harms, that disclosure of such information "would reveal investigative procedures [and] the scope of investigations," which, in turn, could "impede the [agency's investigative] effectiveness . . . by allowing individuals intent on violating the law the ability to alter their behavior for purposes of circumventing the law."  *Id*. ¶ 20.  *Cf. Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (approving the redaction of  portions of BATF manual pertaining to law enforcement investigative techniques).

---

[3]  In addition to the routine uses of such codes for indexing, storing, locating, retrieving and distributing information, case program codes, distribution codes and status codes "indicate various aspects of the enforcement case," which if deciphered could reveal "the scope and relative size of the investigation in terms of agency resources, types of activity being investigated, and location of investigative efforts."  McGinnis Decl. ¶ 20.

### B. Exemption 7(A)

ICE withheld information under FOIA exemption 7(A), which protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).  The agency must demonstrate that "disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Mapother*, 3 F.3d at 1540.  The withheld material must relate to a "concrete prospective law enforcement proceeding." *Bevis v. Department of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986) (*quoting Carson v. United States Dep't of Justice*, 631 F.2d 1008, 1018 (D.C. Cir. 1980)); *see Sussman*, 494 F.3d at 1115 ("relevant proceedings must be pending or reasonably anticipated at the time of the district court's eventual decision").

ICE refers to "an ongoing criminal law enforcement investigation" and claims that "disclosure of certain [unidentified] information relating to current actions being taken with respect to the investigation, past actions taken, or potential future investigative activities could allow the subject(s), or potential subject(s), of the investigation to change their behavior, intimidate witnesses, and/or destroy evidence."  McGinnis Decl. ¶ 22.  ICE's claim of an ongoing investigation, without any evidence of a pending or potential "enforcement proceeding," fails to provide a sufficient basis for withholding records under exemption 7(A)--particularly since at least some charges against plaintiff were dismissed, *supra* at 12, and plaintiff's criminal proceedings were likely concluded by the affirmance of his convictions on direct appeal. *See U.S. v. Durrani,* 835 F.2d 410, 413 (2nd Cir. 1987) (affirming convictions of attempting to export and exporting arms without a license and failing to register with the State Department's Office of Munitions Control).  Defendant has not sustained its burden with regard to exemption 7(A) by

identifying a pending or potential law enforcement proceeding or providing sufficient facts from which the likelihood of such a proceeding may be reasonably inferred. *See, e.g., Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 386 (D.C. Cir. 2007) ("sufficient specificity regarding the government's investigation is provided by its identification of the targets of the investigation: individuals . . . to some degree, related [to], controlled [by], or influenced by Boyd [and] affidavit stat[ing] that . . . the withheld records relate to potential criminal proceedings against individuals") (citation and internal quotation marks omitted).

Moreover, while defendant has described the documents containing the alleged 7(A) material--namely, 81 pages of reports of investigation (*Vaughn* index at 1-3) and five pages of handwritten notes (*Vaughn* index at 5)--it has not correlated this exemption with the applicable withheld portions. *See King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (agency must "specifically identify[] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply.").

Because the Court is without sufficient evidence to find that ICE properly withheld "certain information" under exemption 7(A), McGinnis Decl. ¶ 22, it denies summary judgment to Homeland Security on its invocation of exemption 7(A).

*C.  Exemption 7(C)*

Invoking the privacy provisions of the FOIA, ICE applied exemptions 6 and 7(C) to justify redacting the identifying information of law enforcement and other government personnel, as well as that of other third-party individuals. *Id.* ¶¶ 21, 23.  Exemption 6 protects information about individuals in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  All information that "applies to a particular individual" qualifies for consideration under this

17

exemption.  *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982); *see also  New York Times Co. v. NASA*, 920 F.2d 1002, 1005 (D.C. Cir. 1990) (en banc); *Chang v. Dep't of Navy*, 314 F. Supp.2d 35, 42-43 (D.D.C. 2004).  Because the "[i]nformation sought by plaintiff relates to an ongoing criminal law enforcement investigation," McGinnis Decl. ¶ 22, the Court will address the propriety of withholding such information under the "somewhat broader" protection of exemption 7(C) discussed *supra* at 8-9.  *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (citation omitted).[4]

      For the reasons advanced in the McGinnis declaration, *see id.* ¶ 23, the Court finds that ICE properly redacted the aforementioned third-party information.  That said, plaintiff asserts that the FOIA exemptions are inapplicable because of  government misconduct and bad faith stemming from his "arrest and extradition for an offense that was never committed. . . ." Declaration of Arif A. Durrani [Dkt. No. 28] ¶ 8; *see also generally* Pl.'s Supplement to Oppose Summary Judgment ("Pl.'s Supp. Opp'n") [Dkt. No. 38].  Plaintiff's unsubstantiated and conclusory assertions do not present any probative evidence of "Government impropriety" to trigger the balancing requirement.  *See Favish*, 541 U.S. at 174.  Homeland Security therefore is entitled to judgment on its exemption 7(C) claim.

*D.  Exemption 7(E)*

      Exemption 7(E) protects law enforcement records to the extent that their production "would disclose techniques and procedures for law enforcement investigations or prosecutions,

---

      [4]  Both exemptions 6 and 7(C) require the balancing of the strong privacy interests in the nondisclosure of third-party records against any asserted public interests in their disclosure.  The analysis is the same under both exemptions.  *Cf. Chang v. Dep't of Navy*, 314 F. Supp.2d at 43 (exemption 6) *with Blanton v. U.S. Dep't of Justice*, 63 F. Supp.2d 35, 45 (D.D.C. 1999) (exemption 7(C)); *see also Beck,* 997 F.2d at 1491 (although the "protection available under these exemptions is not the same, . . . [t]he same [balancing] standard" applies).

or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. 552(b)(7)(E). ICE properly applied this exemption to "surveillance" techniques "not known to the subject or potential subject(s) of the ongoing investigation." McGinnis Decl. ¶ 24. McGinnis provides a reasonable explanation for why disclosure of such information could impede current and future investigations. *Id*. "[L]ongstanding precedent" supports this withholding. *Sussman*, 494 F.3d at 1112 (*citing Blanton v. Dep't of Justice*, 64 Fed.Appx. 787, 788-89 (D.C. Cir. 2003); *see Judicial Watch v. U.S. Dep't of Commerce*, 337 F. Supp.2d 146, 181 (D.D.C. 2004) ("Exemption 7(E) affords categorical protection for techniques and procedures used in law enforcement investigations and prosecutions") (citations and internal quotation marks omitted).

For the foregoing reasons, the Court finds that ICE properly withheld information under exemptions 2, 7(C) and 7(E), but failed to satisfy its burden for withholding information under exemption 7(A).

<u>CBP Records</u>

CBP redacted information from eight released pages and withheld three pages in full under FOIA exemptions 2, 5, 6, 7(A), 7(C) and 7(E). Hanson Decl. ¶ 12 & Ex. B. *(Vaughn index* ).

*A.  Exemption 2*

CBP properly withheld internal "administrative markings such as codes" under exemption 2 as "low 2" material. Hanson Decl. ¶¶ 14-15. Moreover, CBP properly justified withholding as "high 2" material information concerning Customs' "examination and inspection procedures, internal reporting requirements, record numbers and instructions on how to process international travelers," which if disclosed could "permit potential violators . . . to develop

19

countermeasures to evade detection, inspection and targeting methods." *Id*. ¶ 16.  *See supra* at 14-15.

## B.  Exemption 5

CBP applied exemption 5 to a handwritten note of an officer of the Fines, Penalties and Forfeiture ("FPF") Office "regarding [a] telephone conversation between the officer and an ICE Special Agent about the "handling of seized jet engines" and to e-mails presumably between those same two individuals regarding the same.  *Vaughn* Index (Documents 20, 21-22).  Relying on the deliberative process privilege and the attorney-client privilege, CBP "withheld [the documents] in full" because they contain "the agencies' internal deliberative thought process and theory of the case concerning details of the investigation and processing and notice of the underlying seizure," *id*. ¶ 21, and "discuss the legal advice sought from or provided to them by the AUSA concerning the handling of the seizure and related investigation," *id*. ¶ 22.  CBP properly justified withholding such information under exemption 5 on the bases of both privileges.  *See supra* at 6-7.

## C.  Exemption 7

CBP's invocation of exemption 7(A) is based on ICE's claim that "the matters which are the subject of Plaintiff's request are the subject of an ongoing criminal law enforcement investigation. . . ." Hanson Decl. ¶ 28.  For the reasons stated as to ICE, *supra* at 16-17, the Court denies CBP's exemption 7(A) claim.

Also for the reasons stated as to ICE, the Court finds that CBP properly applied exemption 7(C) to the identifying information of federal employees, Hanson Decl. ¶ 30, and exemption 7(E) to law enforcement techniques, the disclosure of which could assist potential violators in evading detection by revealing "CBP examination and inspection procedures,

internal reporting requirements and instructions on how to process international travelers." *Id.* ¶ 31.

Record Segregability

With regard to CBP records, Hanson states that "all information [contained in the partially released records] not exempted from disclosure . . . was correctly segregated and non-exempt portions were released" and that the withheld information "was individually determined to be exempt from release." Hanson Decl. ¶ 33. As for the three documents withheld in their entirety (20, 21, 22), Hanson states that he "determined that no portions of those records [could] be reasonably segregated and disclosed, as the exempt information is so inextricably intertwined with the non-exempt information" as to render any releaseable information "meaningless." *Id.* The *Vaughn* index shows that portions of the documents were withheld under exemption 7(A), which the Court has determined was improperly invoked. The Court therefore will defer its finding on the segregability of Homeland Security records pending the agency's reexamination of the ICE and CBP documents in light of the Court's ruling.

4. Adequacy of the Searches

Plaintiff alleges that defendants "concealed" records in a "T" file maintained by EOUSA and Homeland Security. Pl.'s Supp. Opp'n at 10 & attached declaration. The agency is required "to make a good faith effort to conduct a search for the requested records, using methods which can reasonably be expected to produce the information requested." *Int'l Trade Overseas, Inc.*, 688 F. Supp. 33, 36 (D.D.C. 1998) (*quoting Marrera v. Dep't of Justice*, 622 F. Supp. 51, 54 (D.D.C. 1985)) (citation omitted). When an agency's search for records is challenged, "the agency must show beyond material doubt [] that it has conducted a search reasonably calculated

to uncover all relevant documents." *Weisberg v. U.S. Dep't. of Justice*, 705 F.2d 1344, 1351

(D.C. Cir. 1983).  For purposes of this showing, the agency "may rely upon affidavits . . . , as

long as they are relatively detailed and nonconclusory and  . . .  submitted in good faith." *Id*.

(citations and quotation marks omitted).  The required level of detail "set[s] forth the search

terms and the type of search performed, and aver[s] that all files likely to contain responsive

materials (if such records exist) were searched. . . ." *Oglesby v. United States Dep't of the Army*,

920 F.2d 57, 68 (D.C. Cir. 1990); accord *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321,

326 (D.C. Cir. 1999).  "Once the agency has shown that its search was reasonable, the burden

shifts to [plaintiff] to rebut [defendant's] evidence by a showing that the search was not

conducted in good faith." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) *(citing Miller v.*

*U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985)).  Summary judgment is inappropriate

"if a review of the record raises substantial doubt" about the adequacy of the search.

*Valencia-Lucena,* 180 F.3d at 326  (*citing Founding Church of Scientology v. Nat'l Sec'y*

*Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

"In determining the adequacy of a FOIA search, the court is guided by principles of

reasonableness, *see Campbell v. United States Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998),

mindful that an agency is required to produce only those records in its custody and control at the

time of the FOIA request.  *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1110 (D.C.

Cir. 1983).  When a request does not specify the locations in which an agency should search, the

agency has discretion to confine its inquiry to a central filing system if additional searches are

unlikely to produce any marginal return; in other words, the agency generally need not search

every record system." *Campbell*, 164 F.3d at 28.  Moreover, "the fact that a particular document

was not found does not demonstrate the inadequacy of a search." *Boyd*, 475 F.3d at 391.  This is

because "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). Plaintiff did not specifically request that EOUSA or Homeland Security search a "T" file. The issue therefore is whether the searches that were performed were reasonably calculated to locate all relevant records.

In response to plaintiff's request to EOUSA for records in the United States Attorneys Office for the Southern District of California, staff at that office searched by plaintiff's name its "computerized docketing/case management system known as LIONS," as well as "the Federal District Court's Public Access to Computerized Records (PACER) in the party/case index[.]" Luczynski Decl., Ex. I (Declaration of Crystaline Smith ¶¶ 4-5). In addition, the Assistant United States Attorney to whom plaintiff's case was assigned searched his criminal case file and his "Outlook e-mail account for any potentially responsive records[.]" *Id*., Ex. J (Declaration of William P. Cole ¶ 4). The foregoing searches located responsive records. Luczynski states that the responsive records "are maintained in [EOUSA's] Criminal Case File System" and that "[t]here are no other records systems or locations within the Southern District of California in which other files pertaining to Plaintiff's criminal case [] were maintained." Luczynski Decl. ¶¶ 12-13. The Court is persuaded that EOUSA conducted an adequate search for the requested records.

In response to plaintiff's requests to Homeland Security, ICE searched and retrieved records from four separate records systems, each of which it has described in great detail. McGinnis Decl. ¶¶ 9-13. McGinnis has adequately shown why "[n]o other ICE records systems were determined to likely contain [responsive records]." *Id*. ¶ 9. Given the comprehensive search methods employed to locate documents responsive to plaintiff's three separate FOIA

requests, *see id.* ¶¶ 14-17, and ICE's follow through on plaintiff's specific request to search its

New Haven, Connecticut, office for the "Hostage Negotiations" document, *id.* ¶ 17, the Court is

persuaded that ICE conducted an adequate search for the requested records.  In addition, CBP

staff adequately searched its record systems in its Port of  San Diego field offices, including the

agency's "overarching" electronic database known as TECS (Treasury Enforcement

Communications System), Hanson Decl. ¶ 7; *see also* McGinnis Decl. ¶ 10., and located

responsive records.  In the absence of any evidence from plaintiff calling into question the

adequacy of the challenged searches, the Court will grant summary judgment to the defendants

on the search issue.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants DOJ's motion for summary judgment, grants

the State Department's motion for summary judgment except as to its application of exemption 5

to Document M62, and grants Homeland Security's motion for summary judgment except as to

its application of exemption 7(A) to the withheld material.  In addition, the Court defers its

finding on the segregability of State Department and Homeland Security records, and denies

plaintiff's motion for summary judgment.  A separate Order accompanies this Memorandum

Opinion.

_____s/s_____

COLLEEN KOLLAR-KOTELLY

DATE: March 24, 2009                    United States District Judge